UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MT. HAWLEY INSURANCE COMPANY,                                    Case No.

                        Plaintiff,                    **COMPLAINT FOR
                                                                 DECLARATORY RELIEF**

        - against –

HOTEL INVESTORS, LLC d/b/a HAMPTON
INN METAIRIE,

                        Defendant.
------------------------------------------------------------------------X

       Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), through its undersigned counsel, as and for its complaint against defendant Hotel Investors, LLC d/b/a Hampton Inn Metairie ("Investors"), respectfully alleges the following:

### THE PARTIES

       1.     At all times relevant hereto, Mt. Hawley was an insurance company organized under the laws of the State of Illinois having its principal place of business at 9025 North Lindbergh Drive in Peoria, State of Illinois.  Thus, Mt. Hawley is a citizen of the State of Illinois, and is not a citizen of the State of Louisiana.

       2.     At all times relevant hereto, Hotel Investors, LLC d/b/a Hampton Inn Metairie ("Investors") was a Louisiana limited liability company.  Investors' members are Berger Management, LLC, a Louisiana limited liability company whose member is Darryl D. Berger, a resident and citizen of Louisiana, along with Arnold Cooper and Darryl D. Berger, both individual residents and citizens of Louisiana.  Thus, Investors is a citizen of the State of Louisiana, but not the State of Illinois.  Investors may be served through its registered agent, Michael R. Schneider, 909 Poydras Street, Suite 3150, New Orleans, Louisiana 70112.

## JURISDICTION AND VENUE

3.      This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C.

§ 2201.

4.      This court has original jurisdiction of this civil action pursuant to 28 U.S.C. 1332,

in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and

is between citizens of different States.

5.      Investors is subject to personal jurisdiction pursuant to New York General

Obligations Law sections 5-1401 and 5-1402.

6.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(3) because this

lawsuit seeks a declaration of the parties' rights under a policy of insurance that contains the

following mandatory forum selection provision:

### LEGAL ACTION CONDITIONS ENDORSEMENT

This endorsement adds the following to LEGAL ACTION AGAINST US
elsewhere in the policy:

All matters arising hereunder including questions relating to the validity,
interpretation, performance and enforcement of this Policy shall be determined in
accordance with the law and practice of the State of New York (notwithstanding
New York's conflicts of law rules).

It is agreed that in the event of the failure of the Company to pay any amount
claimed to be due hereunder, any Named Insured, any additional insured, and any
beneficiary hereunder shall submit to the jurisdiction of a court of competent
jurisdiction in the State of New York, and shall comply with all the requirements
necessary to give such court jurisdiction.  Any litigation commenced by any Named
Insured, any additional insured, or any beneficiary hereunder against the Company
shall be initiated in New York. Nothing in this clause constitutes or should be
understood to constitute a waiver of the Company's right to remove an action to a
United States District Court.

7.      Declaratory relief is proper regarding the subject matter of this action because there

is an actual controversy between the parties.  By this action, Mt. Hawley seeks a declaration as to

the rights and obligations under an insurance policy issued by Mt. Hawley to Investors in

connection with a claim for insurance benefits arising from alleged storm damage to property owned by Investors.  The dispute involves issues regarding the amount, if any, that Mt. Hawley is required to pay based on the terms of the policy at issue.  Under Title 28 U.S.C. § 2201, this Court has the power to declare obligations and duties of the parties and to give such other relief as may be necessary.

### GENERAL ALLEGATIONS

8.      Mt. Hawley issued a commercial property insurance policy, Policy Number MCP0171460, to Hotel Investors, LLC d/b/a Hampton Inn Metairie, with a policy period from August 10, 2021 through August 10, 2022 (the "Mt. Hawley Policy").  A true and correct copy of the Mt. Hawley Policy is attached hereto and incorporated herein as **Exhibit A**.

9.      The property insured under the Mt. Hawley Policy consisted of a hotel located at 2730 N. Causeway Blvd., Metairie, Louisiana 70002 (the "Property").

10.      On September 5, 2021, Investors submitted notice of a claim for damage to the Property allegedly occurring as a result of Hurricane Ida on or about August 29, 2021 (the "Claim").

11.      Mt. Hawley assigned an independent adjuster to inspect the Property and evaluate the claim.

12.      On September 14, 2021, independent adjuster Larry Kaplan of Engle Martin & Associates ("EMA") inspected the Property with Michael Pousson, representative of Investors. Mr. Kaplan inspected a few rooms and common corridors, which revealed signs of mold and/or water staining on the ceilings and walls in various areas.  However, because the Property was near full occupancy, access to the Property for Mr. Kaplan's inspection was limited to the roof, exterior, interior corridors and those few hotel rooms.

13.     During this inspection, Mr. Kaplan did not note any damage to the flat roofing system, although he observed some rooftop equipment had been affected.  Mr. Kaplan also did not observe any damage to the exterior walls of the Property.  Mr. Kaplan did note some affected landscaping and Investors also claimed that the marquee sign of the Property was affected.

14.     Thereafter, Mt. Hawley retained the following consultants to further assist in Mt. Hawley's investigation of the Claim:

- Construction consultant Michael Nolan with Young & Associates;

- Industrial Hygienist Bryan Day with EFI Global;

- Engineer Steven Pace, P.E. with NV5; and

- Accounting consultant Benjamin Szustak with Meaden & Moore.

15.     On September 10, 2021, Mr. Szustak with Meaden & Moore requested documentation and information pertaining to Investors' claim for business income and extra expense loss.

16.     On September 25-26, 2021, Mr. Kaplan inspected the Property again, with Mr. Pace, Mr. Nolan, and Mr. Day.  During this inspection Mr. Kaplan observed that Investors had placed approximately 60 dehumidifiers in various corridors and rooms throughout the Property. Also during this inspection, Investors informed Mr. Kaplan that approximately 51 of the 111 rooms of the Property had been "taken offline" and were not being rented.

17.     During this inspection, the entire Property was inspected except for 5 of the 111 rooms.  Water presence was primarily found on the window wall of each hotel room.  The water, and some mold, impacted the sheetrock wall, base molding, floor covering, and a full-height clothes/storage cabinet in most rooms.  In the common corridors, water and mold presence was primarily found to the ceilings beneath various air conditioning components on each floor.  Very

little to no damage to business personal property was observed.  Investors' representative also indicated that the pool was affected by debris that required cleaning up.

18. On September 28, 2021, Mt. Hawley sent a reservation of rights letter to Investors.

19. On October 4, 2021, Mr. Pace of NV5 inspected the Property again, along with representatives of Investors and Robert Muller with Young & Associates.

20. Mr. Pace concluded as follows:

- Lack of wind damage to fragile elements/appurtenances on the outside or exposed light-gauge steel exterior wall framing components within the building;

- Displaced or leaning upper portion of cursive letter "I" in the signage on the east-elevation of the building was a pre-existing condition and was not the result of winds during Hurricane Ida;

- Patches and repairs at indentations and cracks in the stucco exterior wall surfaces were not the result of wind gusts or wind-borne debris impacts during Hurricane Ida and were the result of issues that predated Ida;

- Cracks in the stucco without patching or repair were the result of expansion/contraction associated with moisture or temperature gradients and were not the result of Hurricane Ida;

- The roof covering was not damaged by wind or wind-borne debris impacts from Hurricane Ida;

- Water intrusion to the ceiling on the 5th floor was the result of infiltration of roof runoff through the roof membrane and at penetrations from openings that were not the result of a storm but were the result of accumulation of ponded water;

- Water infiltration and associated water damage to the interior finishes and light-gauge steel framing within the exterior wall cavity by the windows was an on-going issue due to wind-driven rain through openings on the exterior of the building that were the result of deferred maintenance and not the result of a storm; and

- The extent of conditions from water intrusion around the east-facing walls/windows were exacerbated by wind-driven rain out of the east direction during Hurricane Ida through openings that were not originally the result of Hurricane Ida.

21.     On October 8, 2021, Mr. Szustak of Meaden & Moore followed-up on his request for documentation and information pertaining to Investors' claim for business income (and extra expense) loss.

22.     On October 15, 2021, John Collier of Legier & Company, a forensic accountant retained by Investors, provided Mr. Szustak with some of the documentation that he had previously requested.

23.     On October 18, 2021, Mr. Kaplan of EMA and Mt. Hawley's consultants inspected the Property again to conclude their site evaluation.

24.     On October 21, 2021, Mr. Collier of Legier & Co. submitted to Mr. Szustak some of the additional materials that Mr. Szustak had previously requested.

25.     On November 5, 2021, Mr. Kaplan of EMA requested any reports or repair estimates from Investors' consultants, and also forwarded a proof of loss in the amount of $250,000.00, constituting the Policy sub-limit for wind-driven rain coverage.

26.     On November 15, 2021, Investors responded to Mr. Kaplan's November 5, 2021 correspondence, disputing that damage to the Property was subject to the Policy sub-limit for wind-driven rain.

27.     On November 16, 2021, Mr. Kaplan responded to Investors' November 15, 2021 correspondence and renewed his request for all documentation supporting Investors' position regarding its claimed loss.

28.     On December 15, 2021, Mt. Hawley sent a second reservation of rights letter to Investors.

29.     On December 22, 2021, Young & Associates prepared an estimate to repair damage to the Property associated with Hurricane Ida.  This damage consisted of wind-driven rain causing

interior water damage, and Young & Associate's estimate totaled $691,623.45 (RCV) / $586,424.44 (ACV).  After applying the Policy deductible of $280,000.00, Investors' net claim totaled $306,424.44.

30.     On December 27, 2021, Mt. Hawley issued a check to Investors in the amount of $250,000.00, constituting the entire Policy sub-limit for damage caused by or resulting from wind-driven rain.

31.     On December 28, 2021, Mt. Hawley sent a coverage determination letter to Investors.

32.     On January 24, 2022, Investors sent correspondence disputing Mt. Hawley's determination that the Claim was subject to the Policy sub-limit for wind-driven rain, contending that wind from Hurricane Ida "caused extreme pressure on the building that created openings in its exterior that later allowed rain to enter the building."  Investors indicated that it would provide Mt. Hawley with opinions of architects, engineers, and weather experts.

33.     On February 2, 2022, Mt. Hawley acknowledged Investors' January 24, 2022 correspondence and provided Investors with Young & Associates' estimate and Mr. Pace's report.

34.     On May 27, 2022, Investors submitted claim documentation to Mt. Hawley and asserted covered damage totaling $11,650,693.51, which included the following:

- Property damage - $9,487.389.51
- Business Interruption - $2,133,564.00
- Extra Expense - $29,740.00

35.     Included in Investors' claim submission were the following:

- May 2022 weather report by Barry D. Keim of Keim Consulting, LLC;
- May 2, 2022 report by Roy Carubba, P.E. of Carubba Engineering;

- January 13, 2022 Roof Investigation Report by Ron Martinez of Scairono Martinez Architects;

- May 5, 2022 Exterior Wall Storm Damage report by Barry Scairono of Scairono Martinez Architects;

- May 19, 2022 business interruption and extra expense claim report by Legier & Company;

- December 28, 2021 limited water intrusion assessment report by Steven Latiolais and Mitch Reiber of Terracon Consultants, Inc.; and

- Various estimates, invoices, proposals and photographs.

36. Mt. Hawley submitted Investors' documentation to its engineers and consultants for review.

37. On June 24, 2022, Mt. Hawley notified Investors in writing that review of Investors' claim documentation by Mt. Hawley's engineers and consultants did not result in a change in Mt. Hawley's claim decision.  Specifically with regard to Investor's business income (and extra expense) claim, Mr. Szustak of Meaden & Moore noted that certain requested documentation and information had never been provided by Investors.  Moreover, Mt. Hawley informed Investors that its claim for business income (and extra expense) loss was subsumed under the $250,000.00 Policy sub-limit for wind-driven rain that Mt. Hawley had previously paid.  However, Mt. Hawley accepted coverage for debris removal from the pool, totaling $2,885.65, and has paid Investors this additional amount.  Finally, Mt. Hawley identified additional requests for information and documentation pertaining to Investors' claim submission.

## THE MT. HAWLEY POLICY

38. The following provisions of the Mt. Hawley Policy are relevant to the issues presented in this matter:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A.**     **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.**     **Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and is limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.**     **Building**, meaning the building or structure described in the Declarations . . .

\* \* \*

**2.**     **Property Not Covered**

Covered Property does not include:

\* \* \*

**q.**     The following property while outside of buildings:

\* \* \*

**(2)**     Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**D.**     **Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

\* \* \*

### OUTDOOR TREES, SHRUBS AND PLANTS

This endorsement modifies insurance provided under the following:

* * *

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A.**     The following is added to **Covered Property:**

Outdoor trees, shrubs and plants at locations described in the Schedule.

**B.**     The following is deleted from **Property Not Covered:**

"Trees, shrubs or plants"

**C.**     The most we will pay for loss or damage to covered trees, shrubs and plants in any one occurrence is the Limit of Insurance for All Items, subject to the separate limit applicable to Each Tree, Shrub or Plant, shown in the Schedule.

**D.**     Outdoor trees, shrubs and plants are subject to all applicable provisions of the Causes Of Loss Form indicated in the Schedule, as well as to the following exclusions….

### ADDITIONAL COVERED PROPERTY ENDORSEMENT

This policy is changed to include the following even though the item(s) listed may be excluded elsewhere in this policy:

Swimming Pool

### COMMERCIAL PROPERTY CONDITIONS

* * *

### H.     POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.**     We cover loss or damage commencing:

**a.**     During the policy period shown in the Declarations; and

**b.**     Within the coverage territory.

### WIND DRIVEN RAIN COVERAGE ENDORSEMENT

We will pay for direct physical loss or damage to the interior of any building, or to personal property in the building caused by or resulting from Wind Driven Rain. Wind Driven Rain is defined as the direct physical loss or damage to the interior of any building covered caused by the sudden and temporary entry of rain, snow, sleet, or ice into the building when propelled by wind, but which does not cause building damage to first occur prior to rain, snow, sleet, or ice entering the building. All loss or damage caused by or resulting from Wind Driven Rain will be subject to the deductible applicable to the occurrence.

**A.     Exclusions and Limitations**

    **1.**     For the purposes of this endorsement, we will not pay for loss or damage caused by or resulting from any of the following:

        **a.**     Wind driven sand or dust;

        **b.**     Thawing of snow, sleet, or ice on the building;

        **c.**     Faulty, inadequate, or defective:

            **(1)**     Planning, zoning, development, surveying, siting;

            **(2)**     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

            **(3)**     Materials used in repair, construction, renovation or remodeling; or

            **(4)**     Maintenance;

        of part or all of any property on or off the covered location.

    **2.**     This endorsement does not insure against loss resulting from:

        **a.**     Continuous or repeated seepage or leakage of water into a building; or

        **b.**     The entry of rain, snow, sleet, or ice into the building if such entry was caused by failure to properly secure the building or by failure to protect the building against normal wear and tear, rust, corrosion, or decay.

**B.     Sublimit (if applicable)**

The sublimit for Wind Driven Rain Coverage as provided under this Endorsement is the amount stated in the Declarations – Sublimit Addendum. This sublimit does not increase the Limit of Insurance.

39.     As noted above, Mt. Hawley's claim investigation determined that the Property

sustained interior water damage as a result of wind-driven rain, and Mt. Hawley has paid Investors

the entire Policy sub-limit for such damage, along with debris removal pertaining to the pool. Nevertheless, Investors is seeking to recover for damage that was either not caused by a Covered Cause of Loss or damage that commenced before the Policy period.

40.    The following provisions of the Mt. Hawley Policy pertain to Investors' claim for business income loss and extra expense:

### BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**A.    Coverage**

    **1.    Business Income**

        * * *

        We will pay for the actual loss or Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss….

        * * *

    **2.    Covered Causes Of Loss, Exclusions And Limitations**

        See applicable Causes Of Loss Form as shown in the Declarations.

        * * *

**C.    Loss Conditions**

        * * *

    **2.    Duties In The Event Of Loss**

        **a.**    You must see that the following are done in the event of loss:

            * * *

**(5)**   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

* * *

**(7)**   Cooperate with us in the investigation or settlement of the claim.

**(8)**   If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**F.**   **Definitions**

* * *

**3.**   "Period of restoration" means the period of time that:

**a.**   Begins:

**(1)**   72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)**   Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

Caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.**   Ends on the earlier of:

**(1)**   The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)**   The date when business is resumed at a new permanent location.

* * *

**6.**   "Suspension" means:

**a.**   The slowdown or cessation of your business activities; or

      **b.**      That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

* * *

## CAUSES OF LOSS – SPECIAL FORM

**A.**      **Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

**1.**      Excluded in Section **B.**, Exclusions; or

**2.**      Limited in Section **C.**, Limitations;

* * *

**C.**      **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**      We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

* * *

      **c.**      The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

* * *

            **(2)**      The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters. However, we will not pay for any loss or damage, caused in whole or in part, directly or indirectly by, resulting from, contributed to or made worse by, or in connection with, any of the

following causes of loss, regardless of any other cause or event that contributes concurrently or in any sequence to the loss: wet or dry rot; wear and tear; rust; corrosion, decay; deterioration; hidden or latent defect; settling; cracking; shrinking or expansion; or faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, materials, or maintenance.

## ORDINARY PAYROLL LIMITATION OR EXCLUSION

Number Of Days (if Ordinary Payroll Coverage is provided):  90

* * *

A.   Business Income includes "ordinary payroll expenses" only up to the number of days shown in the Schedule….

* * *

C.   "Ordinary payroll expenses" means payroll expenses for all your employees except:

   **1.**   Officers;

   **2.**   Executives;

   **3.**   Department managers;

   **4.**   Employees under contract; and . . . .

"Ordinary payroll expenses" include:

   **(1)**   Payroll;

   **(2)**   Employee benefits, if directly related to payroll;

   **(3)**   FICA payments you pay;

   **(4)**   Union dues you pay; and

   **(5)**   Workers compensation premiums.

41.   As noted above, Mt. Hawley's claim investigation determined that Investors' business income and extra expense loss was subject to the wind-driven rain sub-limit, which Mt.

Hawley paid to Investors.  As a result, Investors is not entitled to any additional amounts for business income or extra expense loss.

42.     In addition, Investors' claimed business income loss may include payroll expenses other than those defined in the Ordinary Payroll Limitation or Exclusion above.

43.     Furthermore, Investors failed to cooperate in Mt. Hawley's claim investigation by failing and refusing to provide all requested documentation and information pertaining to Investors' claimed business income and extra expense loss to Mt. Hawley and its consultants.

44.     The following provisions of the Mt. Hawley Policy are also applicable to the Claim and specifically limit and/or exclude coverage:

## CAUSES OF LOSS – SPECIAL FORM

### A.     Covered Causes of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

**2.**     Excluded in Section **B.**, Exclusions; or

**3.**     Limited in Section **C.**, Limitations;

that follow.

### B.     Exclusions

**1.**     We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * *

**h.**     "Fungus", Wet Rot, Dry Rot And Bacteria

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria. But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)**     When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**(2)**     To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

**2.**     We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

**d.**     **(1)**     Wear and tear;

**(2)**     Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\* \* \*

**(4)**     Settling, cracking, shrinking or expansion;

\* \* \*

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

\* \* \*

**f.**     Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

\* \* \*

**3.**     We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.**  But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

        \* \* \*

**c.**     Faulty, inadequate or defective:

    **(1)**     Planning, zoning, development, surveying, siting;

    **(2)**     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)**     Materials used in repair, construction, renovation or remodeling; or

    **(4)**     Maintenance;

        of part or all of any property on or off the described premises.

## C.    Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**2.**     We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

        \* \* \*

**c.**     The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        \* \* \*

> **(2)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters. However, we will not pay for any loss or damage, caused in whole or in part, directly or indirectly by, resulting from, contributed to or made worse by, or in connection with, any of the following causes of loss, regardless of any other cause or event that contributes concurrently or in any sequence to the loss: wet or dry rot; wear and tear; rust; corrosion, decay; deterioration; hidden or latent defect; settling; cracking; shrinking or expansion; or faulty, inadequate or defective planning, design, specifications, workmanship, repair, construction, materials, or maintenance.

\* \* \*

## LOUISIANA CHANGES

**P.**  In the Causes Of Loss – Basic Form, Causes Of Loss – Broad Form, Causes Of Loss – Special Form, Mortgageholders Errors And Omissions Coverage Form and Standard Property Policy, the **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria** is replaced by the following:

**1.**  The coverage described in **P.2.** and **P.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

> **a.**  A Covered Cause of Loss other than fire or lightning; or

> **b.**  Flood, if the Flood Coverage Endorsement applies to the affected premises.

**2.**  We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

> **a.**  Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

      **b.**      The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

      **c.**      The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.**      The coverage described under **P.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of Covered Causes of Loss (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.**      The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

### ORDINANCE OR LAW COVERAGE

**A.**      Each Coverage – Coverage **A**, Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

* * *

**C.**      We will not pay under Coverage **A**, **B** or **C** of this endorsement for:

      **1.**      Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

      **2.**      The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond

to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

\* \* \*

**I.**     The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

### PRE-EXISTING DAMAGE EXCLUSION

We do not cover any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of loss insured under this policy.

The above exclusion shall automatically be removed upon:

**a.**     The completion of all building repairs; and

**b.**     Written evidence, signed by a licensed general contractor, stating that such building repairs have been completed.

### EXCLUSION OF COSMETIC DAMAGE TO ROOF SURFACING

**A.**     The following applies with respect to loss or damage by wind and/or hail to any building and/or structure covered under this policy unless otherwise indicated below:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail.

For the purpose of this endorsement:

**1.**     Cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**2.**     Roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

Exceptions to the above are as follows:

[none]

45.    Exclusion **B.1.h.** above excludes loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria, regardless of any other cause or event that contributes concurrently or in any sequence to the loss. Mt. Hawley's claim investigation determined that Investors' Claim included damage caused by and/or resulting from one or more of these excluded causes, and paid Investors the entire Policy sub-limit for wind-driven rain, which included any even potentially-covered mold damage to the Property as reflected in **LOUISIANA CHANGES**, para **P.4.**  Accordingly, there is no additional coverage under the Mt. Hawley Policy for any additional such damage.

46.    Exclusion **B.2.d.** above excludes loss or damage caused by, among other things, wear and tear, rust, corrosion, decay, deterioration, settling, cracking, shrinking, and expansion. Mt. Hawley's claim investigation determined that Investors' Claim included damage caused by and/or resulting from one or more of these excluded causes.  There is no coverage under the Mt. Hawley Policy for such damage.

47.    Exclusion **B.2.f.** above excludes loss or damage caused by continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.  Mt. Hawley's claim investigation determined that certain roof and interior areas of the Property displayed evidence of continuous or repeated water damage.  To the extent it is determined that such damage occurred over a period of 14 days or more, there is no coverage under the Mt. Hawley Policy.

48.    **Exclusion B.3.c.** above excludes coverage for loss caused by or resulting from faulty, inadequate, or defective construction, maintenance, repairs, materials used in repairs, and maintenance.  Mt. Hawley's claim investigation determined that certain areas of the Property displayed evidence of faulty, inadequate or defective repairs, maintenance, and materials used in repairs and maintenance.  There is no coverage under the Mt. Hawley Policy for such damage.

49.     Limitation **C.1.c.(2)** above provides that there is no coverage for interior water damage unless the building first sustains damage by a Covered Cause of Loss through which the water enters.  Investors' Claim includes water damage to the interior of the Property.  Mt. Hawley's claim investigation determined that the majority of interior water damage to the Property was not the result of any storm-created openings through which the water entered and has paid Investors the entire Policy sub-limit for such damage.  There is no additional coverage under the Mt. Hawley Policy for such damage.

50.     The **Ordinance or Law Coverage** endorsement above excludes coverage for any increased costs associated with the enforcement of any law or ordinance that requires demolition, repair, replacement, reconstruction, remodeling or remediation due to, or testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of "fungus" (including mold or mildew, mycotoxins, spores, scents or by-products of "fungus"), wet or dry rot or bacteria.   To the extent it is determined that Investors' Claim includes damage caused by or resulting from these causes, there is no coverage under the Mt. Hawley Policy.

51.     **The Pre-Existing Damage Exclusion** endorsement above excludes loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of loss.  Mt. Hawley's claim investigation determined that the Property displayed evidence of pre-existing damage.  There is no coverage for such damage, or any damage resulting from or contributed to by such damage, under the Mt. Hawley Policy.

52.     The **Exclusion Of Cosmetic Damage To Roof Surfacing** endorsement above excludes cosmetic damage to roof surfacing caused by wind and/or hail.  To the extent it is

determined that Investors' Claim includes such damage, there is no coverage under the Mt. Hawley Policy.

53.     The Mt. Hawley Policy also contains the following Replacement Cost Optional Coverage:

**G.     Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

* * *

**3.     Replacement Cost**

**a.**     Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.**     This Optional Coverage does not apply to:

**(1)**     Personal property of others;

**(2)**     Contents of a residence;

**(3)**     Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)**     "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.**     You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.**       We will not pay on a replacement cost basis for any loss or damage:

          **(1)**    Until the lost or damaged property is actually repaired or replaced; and

          **(2)**    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    **e.**       We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

          **(1)**    The Limit of Insurance applicable to the lost or damaged property;

          **(2)**    The cost to replace the lost or damaged property with other property:

          **(3)**    The amount actually spent that is necessary to repair or replace the lost or damaged property.

          If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **f.**       The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

## LOUISIANA CHANGES

**E.**    When coverage applies on a replacement cost basis (under the Replacement Cost Optional Coverage in this Coverage Part and/or in an endorsement attached to this Coverage Part), the following is added and supersedes any provision to the contrary with respect to the time period for completion of repair or replacement of loss or damage:

        If the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the covered property is located in an area within the declaration, we will pay on a replacement cost basis only if the repairs or replacement are completed within one year from the date of loss or damage or the issuance of applicable insurance proceeds, whichever is later, or as soon as reasonably possible thereafter.

54.     The **Replacement Cost Optional Coverage** and **LOUISIANA CHANGES**
provide that payment on a replacement cost basis is available under the Mt. Hawley Policy only if
all of the conditions stated in the Optional Coverage are satisfied.  These conditions include,
without limitation, that the damaged property is actually repaired or replaced, and that the repairs
or replacements are made within one year from the date of loss, issuance of applicable insurance
proceeds, or as soon as reasonably possible after the loss or damage.  Investors' Claim includes
loss or damage that has not been repaired or replaced.

<u>**AS AND FOR A FIRST CLAIM FOR RELIEF**</u>
*(Declaratory Judgment)*

55.     Mt. Hawley re-alleges and incorporates by reference the allegations above.

56.     By virtue of the foregoing, there exists an actual, justiciable controversy between
the parties.

57.     Mt. Hawley seeks a declaration that it does not owe any additional amounts to
Investors.

58.     Mt. Hawley further seeks a declaration that Investors breached the Loss Conditions
of the Mt. Hawley Policy and failed to cooperate in Mt. Hawley's investigation of the Claim.

**PRAYER FOR RELIEF**

**WHEREFORE,** Mt. Hawley Insurance Company respectfully requests that the Court
enter judgment finding and declaring the rights of the parties as follows:

A.     Mt. Hawley has paid to Investors all amounts owed under the Mt. Hawley Policy;

B.     Investors breached the Loss Conditions of the Mt. Hawley Policy and failed to
cooperate with Mt. Hawley's investigation of the Claim;

C.     A declaratory judgment that Mt. Hawley does not owe any additional amount to
Investors; and

D.      Such other and further relief to which Mt. Hawley may show itself justly entitled.

Dated: New York, New York
        September 13, 2022

                                    Respectfully submitted,

                                    **CHARTWELL LAW**

                                    By:_____
                                          Matthew Kraus, Esq. (MK0621)
                                    One Battery Park Plaza, Suite 710
                                    New York, NY 10004
                                    mkraus@chartwell.com
                                    Telephone: (212) 785-0757

                                    **QUILLING SELANDER LOWNDS
                                    WINSLETT & MOSER, PC**
                                    Greg Winslett, Esq. (pro hac vice pending)
                                    Michael D. Feiler, Esq. (pro hac vice pending)
                                    2001 Bryan Street, Suite 1800
                                    Dallas, TX 75201
                                    gwinslett@qslwm.com
                                    mfeiler@qslwm.com
                                    Telephone: (214) 871-2100

                                    *Attorneys for Plaintiff*
                                    *Mt. Hawley Insurance Company*